## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SAMUEL A. VASQUEZ O/B/O
YVONNE VASQUEZ-CHACON, DECEASED
CLAIMANT FOR SAMANTHA VASQUEZ,
MINOR DAUGHTER OF CLAIMANT
YVONNE M. VASQUEZ-CHACON,

       Plaintiff,

v.                                                                            CIV 20-0776 WJ/KBM

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

       Defendant.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Plaintiffs [sic] Motion to Reverse or

Remand Administrative Agency Decision (*Doc. 23*) filed on June 1, 2021. Having

carefully reviewed the parties' positions and the material portions of the record, the

Court recommends that the motion be denied.

### I.    Procedural History

On December 15, 2016, Ms. Yvonne Vasquez-Chacon ("Ms. Vasquez-Chacon")

filed applications with the Social Security Administration for a period of disability and

Disability Insurance Benefits under Title II of the Social Security Act ("SSA"), and for

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

Supplemental Security Income under Title XVI of the SSA. Administrative Record[2] (AR) at 15, 86, 99. She alleged a disability onset date of February 24, 2014. AR at 100. Disability Determination Services determined that Ms. Vasquez-Chacon was not disabled both initially (AR at 86-95) and on reconsideration (AR at 99-109). Ms. Vasquez-Chacon requested a hearing with an Administrative Law Judge ("ALJ") on the merits of her applications. AR at 125-26. Prior to the hearing, however, she passed away. AR at 171-72. Her father, Samuel Vasquez, filed a substitution of party and proceeded with her claims. AR at 171. Mr. Vasquez, together with counsel, attended two hearings before an ALJ in connection with Ms. Vasquez-Chacon's disability applications. AR at 35-79. Both Mr. Vasquez and a vocational expert ("VE") testified. *See* AR at 36-72.

ALJ Jeffrey N. Holappa issued an unfavorable decision on July 17, 2019. AR at 15-27. Mr. Vasquez submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 232-33), which the Council denied on October 22, 2019 (AR at 1-3). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.     Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

---

[2] Documents 20-1 through 20-9 contain the sealed Administrative Record. *See Doc. 20.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of his residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[3] ALJ Jeffrey N. Holappa found that Ms. Vasquez-Chacon "had not engaged in substantial gainful activity since February 24, 2014, the alleged onset date." AR at 18 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the ALJ concluded that Ms. Vasquez-Chacon "had the following severe impairments: Degenerative Disc Disease of the Lumbar Spine/Spinal Stenosis/Radiculopathy, Alcoholic Cirrhosis with Esophageal Varices, Pancytopenia, Hepatitis C, Portal Vein Thrombosis/Status-Post Failed TIPS Procedure, Small Umbilical Hernia, and Hepatic Encephalopathy." AR at 18 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ALJ also found that Ms. Vasquez-Chacon had the following non-severe impairments: depression, anxiety, and substance abuse. AR at 18-19. Similarly, the ALJ acknowledged that Ms. Vasquez-Chacon was 5'6" and weighed 190 pounds but concluded that her obesity was not disabling and did not "aggravate[] her other impairments to the point that they would prevent the reduced range of light exertion specified in the claimant's residual functional capacity." AR at 18.

At Step Three, the ALJ found that Ms. Vasquez-Chacon "did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, the ALJ considered the evidence of record and found that Ms. Vasquez-Chacon:

> had the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except she was limited to occasional climbing of ramps & stairs, never climbing ladders or scaffolds,

---

[3] ALJ Holappa first found that Ms. Vasquez-Chacon "met the insured status requirements of the Social Security Act through March 31, 2016." AR at 18.

> occasional balancing, stooping, kneeling, crouching and crawling, and
> could have no exposure to unprotected heights or moving mechanical parts.

AR at 20. Based on this RFC, ALJ Holappa found that Ms. Vasquez-Chacon "was

unable to perform any past relevant work." AR at 25 (citing 20 C.F.R. §§ 404.1565,

416.965). The ALJ also found that Ms. Vasquez-Chacon could perform the jobs of

Housekeeping Cleaner (DOT 323.687-014), Marker (DOT 209.587-034), and

Cleaner/Polisher (709.687-010). AR at 26. Consequently, the ALJ ultimately determined

that Ms. Vasquez-Chacon "ha[d] not been under a disability, as defined in the Social

Security Act, from February 24, 2014, through the date of [the ALJ's] decision." AR at 26

(citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

### III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the

factual findings are supported by substantial evidence in the record and whether the

correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency

in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161,

1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489

F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but

less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th

Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law

that must be followed in weighing particular types of evidence in disability cases, but [it]

will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.*

(quoting *Hackett*, 395 F.3d at 1172 (quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV.   Discussion

Mr. Valdez raises the following issues in his motion: (1) that the ALJ failed to properly consider Ms. Vasquez-Chacon's non-severe impairments when determining her RFC; and (2) that the ALJ erred in relying upon vocational testimony that significant numbers of jobs exist that Ms. Vasquez-Chacon could have performed. *Doc. 23-1* at 19-23. Mr. Valdez also asserts sub-arguments as discussed below. For the reasons that follow, the Court should reject each of Mr. Valdez's arguments and affirm the ALJ's decision.

### A.   The ALJ adequately accounted for Ms. Vasquez-Chacon's non-severe impairments in his RFC assessment.

#### i.   Mental Impairments

First, Mr. Vasquez argues that the ALJ erred by failing to determine the effects, if any, that Ms. Vasquez-Chacon's mental impairments had on her capacity to perform work. *Doc. 23-1* at 21. He suggests that the ALJ erred in his consideration of the non-severe mental limitations assessed by state agency consultants, Cathy Simutis, Ph.D and Stephen Scott, Ph.D and, instead, only "summarily address[ed] the State agency psychological consultants in a 2 sentence paragraph" before assigning them "great

weight." *Id*. Mr. Vasquez maintains that the state agency consultants' opinions regarding Ms. Vasquez-Chacon's mental limitations should have been disregarded. *See Doc. 28* at 4.

In her June 28, 2017 opinion, Dr. Simutis observed that Ms. Vasquez-Chacon was diagnosed with bipolar disorder in December 2016 and had recently been started on anti-psychotic medication. AR at 90-91. She noted that Mr. Vasquez, in his third-party function report, described Ms. Vasquez-Chacon as sensitive, argumentative, and moody, and explained that she did not handle stress or change well. AR at 90. Dr. Simutis also highlighted Mr. Vasquez's observations that Ms. Vasquez-Chacon could pay attention "little" and understood verbal instructions only when "alert." AR at 90. She indicated that Mr. Vasquez "endors[ed]" problems by Ms. Vasquez-Chacon in concentrating, understanding, and getting along with others. AR at 90. Finally, she noted Mr. Vasquez's impression that Ms. Vasquez-Chacon's stutter made her "hard to understand." AR at 90.

Dr. Simutis also summarized available treatment records from Lovelace Westside Hospital, noting that Ms. Vasquez-Chacon was seen "for mainly her physical conditions[,]" "denies depression and other psych symptoms at visits[,]" and was "typically noted to be alert, fully oriented, and normal mood & affect." AR at 90. Similarly, Dr. Simutis observed that, on exam at DaVita Medical Group, Ms. Vasquez-Chacon was "noted to have a mood disorder but normal mood & affect, no decrease in concentration, with intact insight and judgment." AR at 91.

Dr. Simutis emphasized that Ms. Vasquez-Chacon was "not being treated by a mental health professional" and had "not alleged a mental health impairment (although

bipolar was noted in the records)." AR at 91. Her impression from reviewing the

available records was that Ms. Vasquez-Chacon was "limited mainly by pain related to

her physical impairments." AR at 91. Dr. Simutis opined that Mr. Vasquez-Chacon had

"mild" impairments in understanding, remembering, or applying information; interacting

with others; concentrating, persisting, or maintaining pace; and adapting or managing

herself. AR at 90-91.

Mr. Vasquez points out that Dr. Simutis did not consider Ms. Vasquez-Chacon's

records from University of New Mexico Hospital, Nextcare Urgent Care, Academy

Orthopedics, or Bernalillo County Detention Center, as those records were created after

Dr. Simutis offered her opinion. *Doc. 23-1* at 20.[4] Mr. Vasquez suggests that because

Dr. Simutis did not review the enumerated records, her "opinion cannot be relied upon

as substantial evidence to support the conclusion of non-severe impairments." *Doc. 28*

at 4.

Moreover, Mr. Vasquez describes Dr. Scott's opinion as "identical to the

assessment of Dr. Simutis . . . without exception to the psychiatric review authored by

Dr. Simutis." *Doc. 23-1* at 20. Mr. Vasquez emphasizes that Dr. Scott's opinions did not

deviate from Dr. Simutis's opinions despite his opportunity to review additional evidence

from Nextcare and Academy Orthopedics, though he does not articulate how Dr. Scott's

---

[4] In his reply brief, Mr. Vasquez further asserts that Dr. Simutis failed to review Ms. Vasquez-Chacon's records from Lovelace Medical Group (AR at 1826-54 (records from 5/28/2017 to 11/6/2017)), Dr. V. Agarwal, M.D. (AR at 1965-2024 (gastroenterology records from primarily 2016 and 2017 with a handful of records from 2012 and 2013)), Lovelace Hospital (AR at 2025-2116 (records from 5/4/2017 through 9/14/2017)), and Lovelace Women's Hospital (AR at 2117-2194, 2195-2296, 2297-2394 (records from 11/29/2017 to 1/23/2018)). *Doc. 28* at 4. For the most part, these records either post-date Dr. Simutis's opinion or document Ms. Vasquez-Chacon's visits with her gastroenterologist. *See* AR at 1826-2394. These additional records have no bearing on the Court's analysis.

opinion should have changed based upon his review of those records. *See id*. Like Dr. Simutis, Dr. Scott opined that Ms. Vasquez-Chacon had "mild" impairments in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. AR at 103.

The ALJ observed that Drs. Simutis and Scott did not find any severe mental impairments during the relevant period. AR at 19 (citing AR at 86-96, 99-109). The ALJ gave these state agency consultant's opinions "great weight," reasoning that they were consistent with the record, which did "not show that [Ms. Vasquez-Chacon] sought or received any ongoing treatment for any mental impairment" and which "reflect[ed] largely normal [mental status examinations]." AR at 19. The ALJ determined that Ms. Vasquez-Chacon's "depression and anxiety did not cause more than minimal limitations in [her] ability to perform basic mental work activities." AR at 19. Thus, he too characterized her mental impairments as "nonsevere." AR at 19.

Despite finding Ms. Vasquez Chacon's mental impairments nonsevere, the ALJ did not leave those impairments unaddressed. Rather, within his Step-Two discussion, he specified that Ms. Vasquez-Chacon's mental restrictions caused no more than mild restrictions in each of the four broad functional areas of the paragraph B criteria. AR at 19 (citing 20 C.F.R. § 404, Subpt. P, App. 1). He determined that Ms. Vasquez-Chacon had the abilities to learn, recall, and use information; to relate to and work with supervisors, coworkers, and the public; and to focus and control her behavior. AR at 19. The ALJ also discussed Ms. Vasquez-Chacon's activities of daily living, noting that she "cooked, cleaned, took care of her minor daughter including taking her to dance class,

spent time with her family, and shopped in stores." AR at 19. Again, the ALJ highlighted the lack of mental health treatment records, explaining that "[t]he record does not show that the claimant was being treated by a mental health professional." AR at 19. The ALJ also emphasized that Ms. Vasquez-Chacon herself did not allege mental impairments in her Disability Report or when she was treated by providers, in the emergency room or otherwise. AR at 19. Likewise, the ALJ observed that Mr. Vasquez did not testify that Ms. Vasquez-Chacon had mental impairments. AR at 19. Finally, the ALJ explained that Ms. Vasquez-Chacon's mental status examinations ("MSEs") were "unremarkable, with normal mood and affect, no decrease in concentration, and intact insight and judgment." AR at 19 (citing AR at 823-1658, 1526-1658, 1788-1815, 1855-70).

Mr. Vasquez, on the other hand, asserts that "[t]he record is replete with references to diagnosis and treatment for mental issues." *Doc. 23-1* at 19. However, like the Commissioner, the Court finds this contention to be an overstatement of the record. To be clear, there are references in the record to Ms. Vasquez-Chacon's anxiousness and to medications that she was taking for bipolar disorder and major depression during the relevant period. *See, e.g.*, AR at 1371 (9/22/2016 record from Lovelace Westside Hospital indicating that Ms. Vasquez-Chacon "appears slightly anxious" and is "alert, awake, [and] mildly distressed due to abdominal pain"), 1709 (2/1/2017 record from Rosalind DeGeorge, PA-C, identifying prescriptions for bipolar disorder), 1718 (12/27/2016 record from Rosalind DeGeorge, PA-C discussing prescription medication for bipolar disorder), 1735 (11/2/2016 record from Mark Evanko, D.O. assessing major depression as a "[n]ew problem" and prescribing medication). Yet, the bulk of the records discussing Ms. Vasquez-Chacon's mental impairments are from 2010 and

2011, several years before she allegedly became disabled and during a period of incarceration and heavy substance abuse necessitating emergency medical treatment. *See* AR at 1875-1964 (2010 and 2011 records from Bernalillo County Metropolitan Detention Center), 2579-82 (2010 records from Lovelace Medical Center Emergency Department). The ALJ noted that, according to Mr. Vasquez's testimony, Ms. Vasquez-Chacon "had stopped drinking completely about a year before her death." AR at 21. Elsewhere in his decision, the ALJ explained that Ms. Vasquez-Chacon's "symptoms stabilized with treatment and cessation of substance use." AR at 24.

Mr. Vasquez also takes issue with the ALJ's reliance on Ms. Vasquez-Chacon's normal mental status examinations ("MSE"). *Doc. 28* at 5. He maintains that "[n]o such examinations appear in the medical records mentioned[,]" and, further, that a "normal MSE is inconsistent with the claim Ms. Vasquez-Chacon was never treated by a mental health professional." *Id*. Mr. Vasquez is incorrect in both regards. First, numerous treatment records in this case indicate normal MSE findings. *See* AR at 823-1658, 1526-1658, 1788-1815, 1855-70. Second, Mr. Vasquez provides no authority for his suggestion that non-mental health professionals are unable to conduct MSEs; nor is the Court aware of any such authority.

In sum, the treatment notes ***from the relevant period*** document that Ms. Vasquez-Chacon had mental impairments for which she had been prescribed medication and which caused her to exhibit some anxiousness. However, this alone is insufficient to establish a severe or disabling impairment. The Commissioner maintains that substantial evidence supports the ALJ's determination that Ms. Vasquez-Chacon's

mental impairments were non-severe during the relevant period (*Doc. 27* at 5), and the Court agrees.

The ALJ's findings that Ms. Vasquez-Chacon was not receiving *ongoing* treatment for mental impairments and that she was not being treated by a mental health professional during the relevant time are supported by the record. *See*, *e.g.*, AR at 91 (6/28/2017 record noting that Ms. Vasquez-Chacon was "not being treated by a mental health professional[] and has not alleged a mental health impairment (although bipolar was noted in the records)"). In addition, the record confirms that Ms. Vasquez-Chacon exhibited normal MSEs, reported a wide range of activities of daily living, and even continued to work until October 2016. Further, as the ALJ explained Ms. Vasquez-Chacon did not allege in her disability applications that she suffered disability due to mental impairments. *See*, *e.g.*, AR at 86 (indicating that Ms. Vasquez-Chacon filed for disability due to cirrhosis of the liver and back injuries). The Court has little difficulty finding that substantial evidence supports the ALJ's Step-Two finding as to the severity of Ms. Vasquez-Chacon's mental impairments.

Even so, all impairments, including those characterized as non-severe, must be included in an RFC assessment if supported by substantial evidence. *See Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013). And, here, the ALJ omitted mental and social limitations from his RFC determination. *See* AR at 20. This begs the question whether the ALJ adequately considered Ms. Vasquez-Chacon's mental impairments in assessing her RFC.

In his Step-Four discussion, the ALJ again outlined Ms. Vasquez-Chacon's reported activities of daily living, noting that she "cared for her minor daughter, including

taking her to school and to dance and catechism, generally had no problems with personal care, prepared meals, did household chores including dusting and vacuuming, could and did drive, went shopping on a weekly basis, spent time with others, and attended church." AR at 21 (citing AR at 306-14). The ALJ recounted similar statements by Mr. Vasquez, which indicated that Ms. Vasquez-Chacon was the main caregiver for her daughter until her physical conditions worsened shortly before her death and that she performed various household chores, including grocery shopping. AR at 21-25. The ALJ observed that in August 2018, just before her passing, Ms. Vasquez-Chacon presented to the emergency room with a "sudden onset of hematemesis" but reported no "mental status changes." AR at 23. Finally, the ALJ indicated that the record showed that Ms. Vasquez-Chacon did not stop working until October 2016, almost two years after her alleged onset date, though he explained that her work activity failed to constitute substantial gainful activity. AR at 24 (citing AR at 269, 277).

The ALJ reasoned that his RFC determination was "supported by an overall lack of objective medical evidence to support substantially greater limitations than provided by the State agency medical consultants reflected in the [RFC]." AR at 24. Mr. Vasquez, though, argues that the opinions of the State agency consultants cannot constitute substantial evidence supporting the ALJ's decision, because they did not have all the record evidence available when they issued their opinions. *See Doc. 28* at 19-20. He does not specify, however, how later records differ materially from the evidence the state agency consultants considered. *See Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 840-41 (10th Cir. 2020) (rejecting an argument that the state agency opinions were stale, as the claimant merely "point[ed] to later treatment records but fail[ed] to explain

how they materially differ[ed] from the medical evidence predating the . . .  opinions"). Nor does he develop an argument to suggest that contradictory evidence overwhelms the opinions of the State agency consultants. *See id.* (reasoning that the Court would not craft an argument for the claimant where she failed to demonstrate that the state agency opinions were "'overwhelmingly contradicted' by more recent evidence") Instead, he invites the Court to reweigh the opinions of Drs. Simutis and Scott, something the Court must not do.

Simply, Mr. Vasquez's assertion that "the ALJ did not consider the non-severe mental limitations assessed by State agency consultants" (*Doc. 23-1* at 21) is not supported by the record and should be rejected. Moreover, even if the ALJ did err in omitting mental limitations from his RFC determination, the testimony of the VE suggests that such an error was harmless. At Step Five of the sequential evaluation, the ALJ determined that Ms. Vasquez-Chacon could perform the occupations of Housekeeping Cleaner, Marker, and Cleaner/Polisher. AR at 25-26. Critically, the VE testified that all these occupations would remain available if Ms. Vasquez-Chacon were ***further*** limited to performing simple, routine tasks, to making simple work-related decisions, to maintaining attention and concentration for two hours, and to having only occasional interactions with supervisors, coworkers, and the general public. AR at 63-65. In other words, even if the RFC were further restricted to account for mental limitations, a significant number of jobs in the national economy would have remained that Ms. Vasquez-Chacon could have performed.

Ultimately, Mr. Vasquez has neither argued nor shown that greater RFC limitations were necessitated by the record. Without reweighing the evidence, the Court

is satisfied that the ALJ's findings regarding Ms. Vasquez-Chacon's mental impairments and the RFC are supported by substantial evidence. The Court should reject Mr. Vasquez's invitation to reweigh the opinions of Drs. Simutis and Scott and should deny Mr. Vasquez's motion on this ground.

### ii. Pain and fatigue

Mr. Vasquez contends that the ALJ failed to adequately consider Ms. Vasquez-Chacon's pain and fatigue in his RFC assessment. *Doc. 23-1* at 19-21. In determining an RFC, an ALJ must consider the entire record, including the claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). Pursuant to 20 C.F.R. §§ 404.1529(a) and 416.929(a), the ALJ is tasked with considering all the claimant's symptoms and the "extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."

In his decision in this case, the ALJ acknowledged Ms. Vasquez-Chacon's subjective reports of pain and fatigue, *see* AR at 21 (citing AR at 306-14), as well as Mr. Vasquez's testimony that Ms. Vasquez-Chacon attempted to work at times but was unable to maintain employment due to "mostly back pain," AR at 21. However, the ALJ also concluded that while Ms. Vasquez-Chacon's "impairments could reasonably [have been] expected to cause some of the alleged symptoms[,]" her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." AR at 23-24.

The ALJ acknowledged that Ms. Vasquez-Chacon was diagnosed with lumbar radiculopathy and spondylolisthesis and that her medical records from 2016 and 2017

included reports of back pain, lumbar tenderness, positive straight leg raises bilaterally, and poor range of motion in the lumbar spine. *See* AR at 22. He detailed the results of a lumbar magnetic resonance image ("MRI"), which revealed "several levels of mild degenerative changes, including a disc bulge at L4-L5 with joint hypertrophy, mild encroachment on the L5-S1 intervertebral foramina, and grade I spondylolisthesis of L5 on S1 with marked hypertrophic changes and evidence of stenosis." AR at 22.

Despite finding severe back-related impairments, the ALJ also highlighted records that he found inconsistent with Ms. Vasquez-Chacon's complaints of disabling pain. He concluded, for example, that Ms. Vasquez-Chacon's "described daily activities . . . are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR at 24 (citing AR at 306-14) (noting reports of caring for her minor daughter and performing household chores, including dusting and vacuuming, and shopping on a weekly basis); *see also* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The ALJ further observed that Ms. Vasquez-Chacon's records indicated that she exhibited normal gait, normal motor strength and sensation, and normal reflexes and balance. AR at 22.

The ALJ emphasized that Ms. Vasquez-Chacon's "treatment [was] generally routine and/or conservative in nature, consisting largely of medications . . . [, and t]here is no indication that [she] required surgical intervention for her spinal issues." AR at 22. He referenced medical records indicating that Ms. Vasquez-Chacon's back pain was

"controlled with medications."[5] AR at 23-24; *see also* 20 C.F.R. §§ 404.1529(c)(3)(iv)-
(v), 416.929(c)(3)(iv)-(v).

Finally, the ALJ again noted that Ms. Vasquez-Chacon continued to work until
"nearly two years after her alleged onset date." AR at 24 (citing AR at 269, 276). As the
regulations contemplate, even if work performed during the relevant period did not
constitute substantial gainful activities, it may demonstrate that a claimant was capable
of performing more work than she claimed. *See* 20 C.F.R. § 404.1571.

In sum, substantial evidence supports the ALJ's finding that Ms. Vasquez-
Chacon's statements as to the limiting effects of her pain and fatigue were not entirely
consistent with the medical evidence and other evidence in the record. The Court finds
that the ALJ adequately evaluated Ms. Vasquez-Chacon's subjective complaints of pain
and fatigue and recommends that Mr. Vasquez's motion be denied as to this ground.

### B. The ALJ did not err in relying upon vocational testimony that jobs exist in significant numbers that Ms. Vasquez-Chacon could have performed.

The Commissioner has the burden at Step Five of the sequential evaluation to
show that a claimant retains an RFC to perform jobs existing in significant numbers in
the regional or national economy. *Haddock v. Apfel*, 196 F.3d 1084, 1088-89 (10th Cir.
1999). Here, the ALJ determined that there were jobs that existed in significant numbers
in the national economy that Ms. Vasquez-Chacon could have performed. AR at 25.

---

[5] The ALJ acknowledged that in May 2017, Ms. Vasquez-Chacon was "on hydromorphone for
pain, as well as at least two to three more prescription narcotics from 14 different providers." AR
at 22.

At the hearing, the VE testified that despite Ms. Vasquez-Chacon's unavailability due to her recent passing, she could classify Ms. Vasquez-Chacon's past work based upon the documentation in the record and the information provided by Mr. Vasquez. AR at 63. The VE went on to classify Ms. Vasquez-Chacon's prior work as that of a Nurse Aid (DOT 355.674-014), explaining that such work was "semiskilled, SVP 4, and medium." AR at 63.

 In his first hypothetical, the ALJ asked the VE to assume a person of Ms. Vasquez-Chacon's age, education, and work experience, who was limited to *light* work, to lifting and carrying 20 pounds occasionally and 10 pounds frequently, to sitting, standing, and walking for six hours in an eight-hour day, to pushing and pulling as much as lifting and carrying, to only occasional climbing ramps and stairs, to never using ladders or scaffolds, to only occasionally balancing, stooping, kneeling, crouching, and crawling, and to no exposure to unprotected heights or moving mechanical parts. AR at 63. The VE opined that this hypothetical individual would be unable to perform Ms. Vasquez-Chacon's past work as a Nurse Aid. AR at 63. Notably, this first hypothetical was consistent with the ALJ's RFC determination in this case. *Compare* AR at 63, *with* AR at 20 *and* 20 C.F.R. §§ 404.1567(b), 416.967(b). Even so, the ALJ did not ask the VE to identify jobs that could be performed given this RFC and, instead, proceeded to a second, more restrictive hypothetical. *See* AR at 63-64.

In his second hypothetical, the ALJ incorporated the limitations from his first light work hypothetical but further limited the individual to performing only simple, routine tasks, to making simple work-related decisions, to attending and concentrating for two-hour intervals, to adapting to changes in a routine work setting, and to having only

occasional interaction with the general public, co-workers, and supervisors. AR at 63-64. Notably, these additional *mental limitations* were not included in the ALJ's RFC determination in this case. *Compare* AR at 63-64, *with* AR at 20. According to the VE, however, a hypothetical individual with this second set of more restrictive limitations could still perform certain light, unskilled jobs, including Housekeeping Cleaner (DOT 323.687-014) with over 200,000 jobs in the national economy, Marker (DOT 209.587-034) with over 400,000 jobs in the national economy, and Cleaner/Polisher (DOT 709.687-010) with over 7,000 jobs in the national economy. AR at 64.

In his third hypothetical to the VE, the ALJ limited the hypothetical individual even further -- to *sedentary* work but with the same limitations proposed in his second hypothetical, which included the mental limitations omitted from his RFC determination. *See* AR at 64-65. Still, the VE opined that jobs remained available, including Addresser (DOT 209.587-010) with 9,000 jobs in the national economy, Cutter and Paster (DOT 249.587-014) with 5,000 jobs in the national economy, and Stem Mounter (DOT 725.684-018), with 800 jobs in the national economy. AR at 65.

In his final hypothetical to the VE, the ALJ further limited the hypothetical individual to jobs permitting absences two days per month and being off-task for 15 percent of the workday. AR at 65. In response, the VE opined that no jobs existed in the national economy that would allow for these additional limitations. AR at 65.

Again, the ALJ ultimately determined that Ms. Vasquez-Chacon had the RFC to perform light work except that she could only occasionally climb ramps and stairs, could never climb ladders or scaffolds, could only occasionally balance, stoop, kneel, crouch, and crawl, and could have no exposure to unprotected heights or moving mechanical

parts. AR at 20. Relying upon the testimony offered by the VE, the ALJ found that, given this RFC, Ms. Vasquez-Chacon could perform the light unskilled jobs of Housekeeping Cleaner (DOT 323.687-014), Marker (DOT 209.587-034), and Cleaner/Polisher (DOT 709.687-101). AR at 26, 62-72. The ALJ further offered that even if Ms. Vasquez-Chacon "were limited to a sedentary exertional level, . . . representative occupations were available in the national economy." AR at 26.

Mr. Vasquez now submits that "[t]he numbers of jobs testified to by the vocational witness are suspect." *Doc. 23-1* at 23. First, he maintains that "[a]ll the jobs listed as sedentary do not rise to a significant level[,]" and "[t]his would also be the case as to the light job of Stem Mounter which amounts to 800 jobs." *Id*. In his reply brief, Mr. Vasquez suggests that the "jobs of Address[er] and Cutter and Paster are obsolete" and the Stem Mounter job is an "electrical assembly which will soon be extinct." *Doc. 28* at 10-11.

These arguments are red herrings. The jobs of Addresser, Cutter and Paster, and Stem Mounter were identified by the VE as jobs available at the ***sedentary*** exertional level. *See* AR at 65. But, here, the ALJ determined that Ms. Vasquez-Chacon had the RFC to perform jobs at the ***light*** exertional level, with certain additional limitations. *See* AR at 20. Thus, the light jobs identified by the VE, not the sedentary jobs, were the ones of consequence to the ALJ's disability decision in this case. Critically, the VE testified, and the ALJ found, that there were hundreds of thousands of jobs available in the national economy at the light exertional level. *See* AR at 26 (identifying three jobs at the light exertional level, which in total amount to approximately 607,000 jobs in the national economy). Mr. Vasquez does not argue that 607,000 jobs would fail to rise to a significant level, nor could he.

As to the light jobs identified by the VE, Mr. Vasquez submits that two of them, Housekeeping Cleaner and Marker, should have been eliminated because they "require knowledge of machines and tools, including their designs, uses, benefits, repair, and maintenance." *Doc. 23-1* at 23 (citing "O*Net crosswalk listed in the Dot for Maid and Housekeeping Cleaners . . . and Marking Clerks"). Mr. Vasquez seems to suggest that the requirements as to knowledge of machines and tools are incompatible with the RFC limitation precluding exposure to moving mechanical parts. *Id*. But, as the Commissioner observes, the DOT entries for both Housekeeping Cleaner and Marker indicate that exposure to "Moving Mech. Parts" is "Not Present." *Doc. 27* at 10; *see also* Cleaner, Housekeeping, DOT 323.687-014, 1991 WL 672783; Marker, DOT 209.587-034, 1991 WL 671802. Further, the O*Net database upon which Mr. Vasquez relies is not recognized as a reliable source by the Social Security Administration. *See* 20 C.F.R. §§ 404.1566(d), 416.966(d) (enumerating the publications from which the Social Security Administration will take administrative notice of reliable job information, omitting O*Net).

For the first time in his reply brief, Mr. Vasquez suggests that the Housekeeping Cleaner and Marker jobs exceed the light exertional level. *See Doc. 28* at 11-12. He submits that the Marker job, for instance, requires lifting more than 20 pounds and standing/walking for 75% of the day. *Id.* (citing SOC 43-7065). As for the Housekeeping Cleaner job, he suggests that this job is a composite job with the alternate title of "maid" and that it requires the cleaning of rooms and halls in commercial establishments and the moving of furniture, hanging of drapes, and rolling of carpets. *Id.*

The Court does not find these underdeveloped, untimely arguments persuasive. The DOT "includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy." 20 C.F.R. § 220.134(a). And, here, the DOT clearly classifies both the Marker and Housekeeping Cleaner jobs as jobs that fall within the light exertional category. Marker, DOT 209.587-034, 1991 WL 671802 (Jan. 1, 2016); Housekeeping, Cleaner, DOT 323.687-014, 1991 WL 672783 (Jan. 1, 2016). Mr. Vasquez has cited to nothing indicating that the VE's reliance, and in turn the ALJ's reliance, on the DOT's exertional levels is impermissible. *See Rivera v. Berryhill*, 242 F. Supp. 3d 1226, 1244 (D.N.M. 2017). Rather, the regulations required the Commissioner to take administrative notice of the job information provided by the DOT. 20 C.F.R. §§ 404.1566, 416.966. Moreover, Mr. Vasquez raised his assertions as to the proper exertional level of these jobs for the first time in his reply brief, and, as such, the Court need not consider them. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) (noting that "the general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").

Mr. Vasquez also submits that the ALJ should have performed the analysis described in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). *Doc. 23-1* at 23. He argues that the "Tenth Circuit has applied the principle of harmless error to affirm the failure of the Administration to assess the *Trimiar* factors in cases involving as few as 152,000 jobs." *See Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016).

The Commissioner insists that *Trimiar* is inapposite in this case (*Doc. 27* at 9), and again the Court agrees. In *Trimiar*, the Tenth Circuit determined that the ALJ's finding that 650 to 900 jobs "in the region in which the claimant reside[d] and in the

national economy" was a significant number. *Trimiar*, 966 F.2d at 1330. Here, in

contrast, both the VE and the ALJ specified that the jobs identified existed "in significant

numbers in the *national* economy." *See* AR at 26, 64-65 (emphasis added). Further,

contrary to Mr. Vasquez's position, the harmless error analysis does not apply in this

case, because the Court finds no reason to discount any of the light jobs identified by

the VE. *Mares v. Berryhill*, No. 18cv0004 KBM, 2019 WL 1085193, at *5 (D.N.M. Mar. 7,

2019) (concluding that the *Trimiar* analysis was not triggered where the court did not

discount any of the jobs identified by the VE).

Relying upon the testimony of the VE, the ALJ determined that 607,000 jobs was

a significant number in the national economy. AR at 25-26. "[T]he Court does not now

'presume to interpose [its] judgment for that of the ALJ.'" *Mares*, 2019 WL 1085193, at

*5 (citing *Garcia v. Berryhill*, No. 16cv1266 SCY, 2018 WL 1620922, at *5 (D.N.M. Mar.

31, 2018)).

Because the circumstances here do not trigger a *Trimiar* analysis, the Court must

instead determine whether "substantial evidence supports the ALJ's determination that

[the claimant] 'was capable of making a successful adjustment to other work that

existed in significant numbers." *Id*. In making this determination, it is "proper for the ALJ

to look only at the number of jobs that exist in the national economy." *Id*. (citing

*Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009)). Ultimately, the Court is

satisfied that substantial evidence supports the ALJ's determination on this point

Mr. Vasquez raises a final challenge to the job numbers relied upon by the VE in

this case. In his reply brief, he asserts that the VE's methodology was unreliable and

that she used improper sources when offering testimony as to the number of jobs

available in the national economy. This argument, however, comes too late, as he

raises it for the first time in his reply brief.[6] As such, the Court will not entertain this

argument. *See M.D. Mark, Inc.*, 565 F.3d at 768 n.7.

      In sum, Mr. Vasquez fails to demonstrate that there is any error in the ALJ's

Step-Five analysis or any inconsistency between the VE's testimony and the DOT.  The

Court, therefore, recommends denial of Mr. Vasquez's motion on this ground.

## V.    Conclusion

      For all the reasons above, Mr. Vasquez has failed to demonstrate that the ALJ's

findings were not supported by substantial evidence or that he failed to apply the correct

legal standards.

      Wherefore,

      **IT IS THEREFORE RECOMMENDED** that Plaintiffs [sic] Motion to Reverse or

Remand Administrative Agency Decision (*Doc. 23*) be denied.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a

copy of these Proposed Findings and Recommended Disposition they may file written

objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A**

**party must file any objections with the Clerk of the District Court within the**

**fourteen-day period if that party wants to have appellate review of the proposed**

---

[6] In his opening brief, Mr. Vasquez recounted the VE's testimony as to the sources she used to
arrive at job numbers. *Doc. 23-1* at 22. He did not, however, assert that her methodology was
unreliable, let alone develop any argument in this regard. *See Doc. 23-1.*

**findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

_Karen B Molzen_
HONORABLE KAREN B. MOLZEN
UNITED STATES MAGISTRATE JUDGE